IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 19-cv-00951-PAB-KLM

UNITED STATES OF AMERICA,

    Plaintiff,

v.

DAVID L. CANTLIFFE,
PERRY M. WENTLING, as Trustee of the 630 S. SNOWMASS LAND TRUST,
MARGI H. CANTLIFFE,
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.,
OCWEN LOAN SERVICING, LLC,
COLORADO DEPARTMENT OF REVENUE, and
BOULDER COUNTY, COLORADO,

    Defendants.

## ORDER

This matter is before the Court on the United States' Motion for Summary Judgment Against Defendant David L. Cantliffe [Docket No. 40]. Defendant did not respond to the motion. The Court has jurisdiction pursuant to 28 U.S.C. §§ 1340 and 1345.

### I. BACKGROUND[1]

In 2002, defendant David L. Cantliffe purchased a piece of real property ("the

---

[1] Because defendant did not respond to the motion for summary judgment, the Court takes all supported statements of undisputed fact in the United States' motion as true. *See Reed v. Bennett*, 312 F.3d 1190, 1195 (10th Cir. 2002) ("By failing to file a response within the time specified by the local rule, the nonmoving party waives the right to respond or to controvert the facts asserted in the summary judgment motion. The court should accept as true all material facts asserted and properly supported in the summary judgment motion.").

Property") located at 630 South Snowmass Circle, Superior, Colorado, 80027, for $623,348. Docket No. 40 at 7, ¶¶ 10-11. Cantliffe took out two mortgages to pay for the property, the junior of which is fully paid. *Id.*, ¶¶ 12-13. As of November 7, 2019, Cantliffe owed approximately $350,000 on the senior mortgage. *Id.*, ¶ 13.

In 2004, Cantliffe created the 630 S. Snowmass Land Trust ("the Trust") and purported to transfer the Property to it, via quitclaim deed, for ten dollars. *Id.* at 8, ¶ 15. While the deed was recorded with Boulder County on April 28, 2005, the agreement purporting to establish the Trust was not. *Id.*, ¶ 16. The trust agreement specifically stated that "[n]either this Agreement nor any summary of the contents hereof shall be placed on record in the county in which the Trust Property is located." *Id.*, ¶ 17. Cantliffe and his then-wife, Margi Cantliffe, were named as beneficiaries, and Cantliffe's father-in-law, Perry M. Wentling, was named as the trustee. *Id.*, ¶¶ 18-19. Mr. Wentling and Ms. Cantliffe have disclaimed any interest in the Property. *Id.* at 9, ¶ 22; *id.* at 11, ¶ 38. Mr. Wentling was never paid for his services as trustee and did not pay any expenses associated with the property. *Id.* at 9-10, ¶¶ 26-27

The trust agreement gave the beneficiaries the right to "participate in the management and control of the Trust Property," to direct the trustee "to convey or otherwise deal with the title to the Trust Property," and the right to receive proceeds if the Property was sold, rented, or mortgaged. *Id.* at 9, ¶¶ 23-24. Cantliffe lived at the Property before purporting to transfer the Property to the Trust, and continued to live there after the transfer. *Id.* at 10, ¶ 29. Cantliffe, as opposed to the Trust, makes mortgage payments for the Property, pays property taxes, pays homeowners'

association dues, and pays the electricity, gas, and water bills associated with the Property. *Id.* at 10-11, ¶¶ 30-33. Cantliffe has claimed a deduction on his personal tax returns for his mortgage interest in the Property, and has claimed a deduction for business use of his home office on the Property. *Id.* at 11, ¶¶ 34-35.

Cantliffe filed individual income tax returns for the tax years 2005, 2006, 2007, 2008, and 2010. *Id.* at 3, ¶ 1.[2] However, Cantliffe did not pay the amounts in taxes that he owed. *Id.* at 4, ¶ 3. A delegate of the Secretary of the Treasury made assessments against Cantliffe for taxes, penalties, and interest. *Id.* As of January 31, 2020, Cantliffe owes $263,214 in delinquent taxes. *Id.* at 5, ¶ 6. The IRS notified Cantliffe that balances were due for each tax year and recorded a Notice of Federal Tax Lien ("NFTL") with the Boulder County Recorder for each tax year at issue.. *Id.* at 5-6, ¶¶ 7-8. In addition, the IRS issued NFTLs for the Trust as Cantliffe's nominee. *Id.* at 6, ¶ 9.

On April 1, 2019, the United States filed this lawsuit against defendant Cantliffe, seeking judgment against Cantliffe for his unpaid federal income tax liabilities and a judgment determining that Cantliffe is the true owner of the Property. Docket No. 1 at 10. The United States also seeks a decree of sale on the Property to enforce its tax liens. *Id.* at 12. On February 19, 2020, the United States filed this motion for summary judgment. Docket No. 40.

## II. LEGAL STANDARD

While defendant did not respond to the government's summary judgment

---

[2] In 2011, Cantliffe submitted an amended return for the 2008 tax year. Docket No. 40 at 4, ¶ 4. The IRS made a reduction in amounts owed based on the new return. *Id.*

motion, the Court "may not grant an unopposed motion for summary judgment unless the moving party has met its burden of production and demonstrates that it is legally entitled to judgment under Rule 56." *Altschwager v. Progressive Cas. Ins. Co.*, No. 18-cv-0280-WJM-MEH, 2019 WL 2515404, at *1 (D. Colo. June 18, 2019). Summary judgment is warranted under Federal Rule of Civil Procedure 56 when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A disputed fact is "material" if under the relevant substantive law it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231-32 (10th Cir. 2001). Only disputes over material facts can create a genuine issue for trial and preclude summary judgment. *Faustin v. City & Cty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005). An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

### III. ANALYSIS

The United States seeks judgment (1) against Cantliffe for the outstanding tax liabilities; (2) declaring that Cantliffe is the true owner of the property; and (3) foreclosing the United States' liens on the subject property. *See* Docket No. 40.

#### A.  Outstanding Tax Liabilities

"In any case where there has been a refusal or neglect to pay any tax," the United States may file a civil action "to enforce the lien of the United States under this title with respect to such tax or liability or to subject any property, of whatever nature, of

the delinquent, or in which he has any right, title, or interest, to the payment of such tax or liability." 26 U.S.C. § 7403(a). The United States seeks a judgment in its favor and against Cantliffe "in the amount of $263,214, as calculated through January 31, 2020 . . . plus such additional interest and penalties as they may continue to accrue until paid in full, net any payments and credits according to proof." Docket No. 40 at 13. The United States has submitted, with its summary judgment motion, Forms 4340 for each of the tax assessments at issue. *See* Docket Nos. 40-7; 40-8; 40-9; 40-10; and 40-11 (Forms 4340 for tax years 2005-2008 and 2010).

Forms 4340 are certificates of tax assessments and payments and are "routinely used to prove that tax assessment has in fact been made." *Guthrie v. Sawyer*, 970 F.2d 733, 737 (10th Cir. 1992). They are "presumptive proof of a valid assessment." *Id.* "If a taxpayer does not present evidence indicating to the contrary, a district court may properly rely on the forms to conclude that valid assessments were made." *Id.* at 737-38. Here, Cantliffe has not provided evidence or made an argument indicating that the Forms 4340 are not proof of valid assessments. These forms, which "are sufficient evidence . . . that the notices and demand for payment of the liabilities were properly sent" to the taxpayer, *United States v. Martens*, No. 14-cv-01199-WYD-KMT, 2016 WL 1212704, at *4 (D. Colo. Feb. 23, 2016), *report and recommendation adopted*, 2016 WL 1182754 (D. Colo. Mar. 28, 2016), are accordingly presumed valid. The Court finds that the United States has demonstrated that it is entitled to judgment in its favor for Cantliffe's outstanding tax liabilities for tax years 2005, 2006, 2007, 2008, and 2010.

5

### B.   Ownership of the Property

The United States seeks a lien on the subject Property based on the tax assessments issued against Cantliffe.  "A valid tax lien attaches to any property owned by the taxpayer at the time the tax-deficiency assessment is made." *United States v. Ledford*, No. 10-cv-01351-PAB-MEH, 2011 WL 7639794, at *6 (D. Colo. July 13, 2011), *report and recommendation adopted by* 2012 WL 1079552 (D. Colo. Mar. 30, 2012); *see also* 26 U.S.C. § 6321 (stating that delinquent tax amounts "shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person.").  "'[P]roperty' and 'rights to property' may include 'not only property and rights to property owned by the taxpayer but also property held by a third party if it is determined that the third party is holding the property as a nominee . . . of the delinquent taxpayer.'" *Holman v. United States*, 505 F.3d 1060, 1065 (10th Cir. 2007) (quoting *Spotts v. United States*, 429 F.3d 248, 251 (6th Cir. 2005)).  Thus, the Court must determine whether the Property is held by the Trust as a nominee of Cantliffe.

When evaluating whether a piece of property is held in the name of a nominee, courts consider the following factors:

> (1) whether inadequate or no consideration was paid by the nominee; (2) whether the property was placed in the nominee's name in anticipation of a lawsuit or other liability while the transferor remains in control of the property; (3) whether there is a close relationship between the nominee and the transferor; (4) whether they failed to record the conveyance; (5) whether the transferor retained possession; and (6) whether the transferor continues to enjoy the benefits of the transferred property.

*Martens*, 2016 WL 1212704, at *7.  This test "attempts to discern whether a taxpayer

has engaged in a sort of legal fiction, for federal tax purposes, by placing legal title to property in the hands of another while, in actuality, retaining all or some of the benefits of being the true owner." *Id.* at *6 (quotation omitted).

Here, the Trust paid little consideration – only ten dollars – for the Property. Docket No. 40 at 8, ¶ 15. The conveyance was not publicly recorded, *id.*, ¶ 16, and, in fact, the trust agreement expressly provided that the conveyance not be recorded. *Id.*, ¶ 17. In addition, Cantliffe resides in the Property and makes the Property's mortgage payments and property taxes and pays its HOA dues. *Id.* at 10-11, ¶¶ 29-32. Cantliffe also enjoys benefits from the Property, as he has claimed tax deductions for mortgage interest in and business use of the Property. *Id.* at 11, ¶¶ 34-35. Finally, it appears there is a close relationship between Cantliffe and the Trust; Cantliffe established the Trust and named himself and his then-wife as the sole beneficiaries. *Id.* at 8, ¶¶ 15, 18. Cantliffe maintained control over the Trust Property; the trust agreement provided that Cantliffe had the right to manage and control the Trust Property and to convey title of the Property, and also provided that Cantliffe would receive the proceeds of any sale of the Property. *Id.* at 9, ¶ 23. Further, because Ms. Cantliffe and Mr. Wentling disclaimed any interest in the Trust Property, Mr. Cantliffe has the sole interest in the Property. *Id.* at 9, ¶ 22; *id.* at 11, ¶ 38. Considering these factors, the Court finds that Cantliffe has retained many, if not all, of the benefits of being the true owner of the Property and finds that the Property was conveyed to the Trust as a nominee only. As a result, the Court finds that the tax liens against Cantliffe attach to the subject Property.

### C. Foreclosure

The United States seeks an order foreclosing its liens on the Property. Docket No. 40 at 17. In an action to enforce a federal tax lien,

> The court shall, after the parties have been duly notified of the action, proceed to adjudicate all matters involved therein and finally determine the merits of all claims to and liens upon the property, and, in all cases where a claim or interest of the United States therein is established, may decree a sale of such property, by the proper officer of the court, and a distribution of the proceeds of such sale according to the findings of the court in respect to the interests of the parties and of the United States.

26 U.S.C. § 7403(c). Here, the validity of the tax liabilities underlying the tax liens have been firmly established, and the Court has determined that the tax liens attach to the subject Property. As a result, the Court finds that the United States is entitled to foreclose on its tax liens and entitled to an order of foreclosure and judicial sale.

## IV. CONCLUSION

For these reasons, it is

**ORDERED** that United States' Motion for Summary Judgment Against Defendant David L. Cantliffe [Docket No. 40] is **GRANTED**. It is further

**ORDERED** that the Internal Revenue Service is authorized and directed under 28 U.S.C. §§ 2001 and 2002 to offer for public sale the parcel of real property located at 630 South Snowmass Circle, Superior, Colorado, 80027 to satisfy liens attached to the property, as follows:

1. As described in the Complaint, Docket No. 1 at 3-6, ¶¶ 15-22, the IRS made valid assessments against defendant David L. Cantliffe for federal income taxes, interest, and penalties. These assessments gave rise to valid and subsisting federal

tax liens on all of Mr. Cantliffe's property and rights to property. Such liens are effective as of the dates of those assessments. The United States further protected its liens by filing Notices of Federal Tax Liens with the Boulder County Recorder's Office, on the dates described in the Complaint. *Id.* at 7-9, ¶ ¶ 31-37. Pursuant to the United States' Motion, the Court has found that the liens have attached to the Property at issue here. To the extent the defendant 630 S. Snowmass Land Trust purports to hold title to the Property, it does so only as Mr. Cantliffe's nominee.

2. Section 7403, Title 26 of the United States Code entitles the United States to enforce its liens against the Property in order to apply the proceeds towards Mr. Cantliffe's tax liabilities.

3. Therefore, the federal tax liens for Mr. Cantliffe's federal income tax liabilities for the 2005, 2006, 2007, 2008 and 2010 tax years (i.e., the liabilities described in the Complaint) are hereby foreclosed. The United States Marshal, his/her representative, or an Internal Revenue Service Property Appraisal and Liquidation Specialist ("PALS") representative is authorized and directed under 28 U.S.C. §§ 2001 and 2002 to offer the Property for public sale free and clear of the right, title, and interest of all parties to this action, and any successors in interest or transferees of those parties. The United States may choose either the United States Marshal or a PALS representative to carry out the sale under this Order of Foreclosure and Judicial Sale, and shall make the arrangements for any sales as set forth in this Order. This Order of Foreclosure and Judicial Sale shall act as a special writ of execution and no further orders or process from the Court shall be required.

4. The United States Marshal, his/her representative, or a PALS representative,

is authorized to have free access to the Property and to take all actions necessary to preserve the Property, including, without limitation, retaining a locksmith or other person to change or install locks or other security devices on any part thereof, until a deed thereto is delivered to the ultimate purchaser(s).

5. The terms and conditions of the sale are as follows:

a. Except as otherwise stated herein, the sale of the Subject Property shall be by public auction to the highest bidder, free and clear of all liens and interests of parties to this action, with the proceeds of such sale to be distributed in accordance with the priority of the lienholders set forth in paragraph 10, below.

b. The sale shall be subject to all laws, ordinances, and governmental regulations (including building and zoning ordinances), affecting the premises, and easements and restrictions of record, if any.

c. The sale shall be held on the Property's premises or at any other place in accordance with the provisions of 28 U.S.C. §§ 2001 and 2002, at a date and time announced by the United States Marshal, his/her representative, or a PALS representative.

d. Notice of the sale shall be published once a week for at least four consecutive weeks before the date fixed for the sale in at least one newspaper regularly issued and of general circulation in Boulder County, Colorado, and, at the discretion of the Marshal, his/her representative, or a PALS representative, by any other notice that it or its representative may deem appropriate. State or local law notice requirements for foreclosures or execution sales do not apply to the sale under federal law, and state or local law regarding redemption rights do not apply to this sale. The notice or notices of

sale shall describe the Property and shall contain the material terms and conditions of sale in this Order of Foreclosure and Sale.

  e. The minimum bid will be set by the Internal Revenue Service. If the minimum bid is not met or exceeded, the Marshal, his/her representative, or a PALS representative may, without further permission of this Court, and under the terms and conditions in this Order of Foreclosure and Judicial Sale, hold new public sales, if necessary, and reduce the minimum bid or sell to the highest bidder.

  f. The successful bidder shall be required to deposit, at the time of sale with the Marshal, his/her representative, or a PALS representative, a minimum of 10 percent of the bid, with the deposit to be made by a certified or cashier's check payable to the United States District Court for the District of Colorado.

  g. The balance of the purchase price of the Property in excess of the deposit shall be paid to the Marshal or a PALS representative (whichever person is conducting the sale) within 30 days after the date the bid is accepted, by a certified or cashier's check payable to the United States District Court for the District of Colorado. If the successful bidder or bidders fails to fulfill this requirement, the deposit shall be forfeited and shall be applied to cover the expenses of the sale, including commissions due under 28 U.S.C. §1921(c), with any amount remaining to be applied first to the federal tax liabilities of David L. Cantliffe. The Property shall be again offered for sale under the terms and conditions of this Order of Foreclosure and Judicial Sale or, in the alternative, sold to the second-highest bidder. The United States may bid as a credit against its judgment without tender of cash.

  h. The sale of the Property shall not be final until confirmed by this Court.

The Marshal or a PALS representative shall file a report of sale with the Court within 30 days from the date of receipt of the balance of the purchase price.

  i. Upon confirmation of the sale, the Marshal or PALS representative shall promptly execute and deliver a deed of judicial sale conveying the Subject Property to the purchaser or purchasers.

  j. Upon confirmation of the sale, the interests of, liens against, or claims to the Property held or asserted by the United States and any other parties to this action or any successors in interest or transferees of those parties shall be discharged and extinguished. The sale is ordered pursuant to 28 U.S.C. § 2001. Redemption rights under state or local law shall not apply to this sale under federal law.

  k. Upon confirmation of the sale, the purchaser or purchasers are responsible for causing the transfer of the Property to be recorded in the property records for Boulder County.

6. Until the Property is sold, David L. Cantliffe shall take all reasonable steps necessary to preserve the Property (including the preservation of all buildings, improvements, fixtures, and appurtenances thereon) including, without limitation, maintaining fire and casualty insurance policies on the Property. He shall keep current in paying real property taxes as they are assessed by Boulder County. He shall not commit waste against the Property, nor shall he cause or permit anyone else to do so. He shall not do anything that tends to reduce the value or marketability of the Property, nor shall he cause or permit anyone else to do so. He shall not record any instruments, publish any notice, or take any other action that may directly or indirectly tend to adversely affect the value of the Property or that may tend to deter or discourage

potential bidders from participating in the public sale, nor shall he cause or permit anyone else to do so. Violation of this paragraph shall be deemed a contempt of Court and punishable as such.

      7.   All persons occupying the Property shall leave and permanently vacate the Property no later than 15 days after the date of this Order, each taking with them his or her personal property (but leaving all improvements, buildings, fixtures, and appurtenances) when leaving and vacating.  If any person fails or refuses to leave and vacate the Property by the time specified in this Order, the United States Marshals Service or its representative is authorized to take whatever action it deems appropriate to remove such person or persons from the premises, whether or not the sale of the Property is being conducted by a PALS representative.  Such action may include, but is not limited to, the use of reasonable force, and to enter and remain on the premises including, but not limited to, the land and any structures thereon, for the purpose of executing this Order.  The United States Marshal is further authorized and directed to arrest and/or evict from the premises any and all persons who obstruct, attempt to obstruct, or interfere or attempt to interfere in any way with the execution of this Order.  If any person fails or refuses to remove his or her personal property from the Property by the time specified herein, the personal property remaining at the Property thereafter is deemed forfeited and abandoned, and the United States Marshals Service, its representative, or the PALS representative is authorized and directed to remove and dispose of it in any manner they see fit, including sale, in which case the proceeds of sale are to be applied first to the expenses of sale, and then to the tax liabilities at issue herein.

8. Notwithstanding the terms of the immediately preceding paragraph, if, after the sale of the Property is confirmed by this Court, the Property remains occupied, a writ of assistance may, without further notice, be issued by the Clerk of Court pursuant to Rule 70 of the Federal Rules of Civil Procedure to compel delivery of possession of the Subject Property to the purchaser or purchasers thereof.

9. If any person occupying the Property leaves or vacates prior to the deadline set forth in Paragraph 7, above, such person shall notify counsel for the United States no later than two business days prior to vacating the property of the date on which he or she is vacating the property. Notification shall be made by leaving a message for counsel for the United States, E. Carmen Ramirez, at (202) 616-2885.

10. The U.S. Marshal, his/her representative, or a PALS representative, shall deposit the amount paid by the purchaser or purchasers into the registry of the Court. Upon appropriate motion for disbursement, the Court will disburse the funds in the following order of preference until these expenses and liens are satisfied, pursuant to a stipulation between the United States and other claimants (*see* Docket No. 39-1 at 5-6):

    a. the sales proceeds should be distributed first to the United States to the extent of its costs and expenses of the sale;

    b. any funds remaining should be distributed next to defendant Boulder County, Colorado to satisfy any unpaid property tax liens that may have arisen and become enforceable that are entitled to priority under 26 U.S.C. § 6323;

    c. any funds remaining should be distributed next to PHH Mortgage Corporation, as successor by merger to defendant Ocwen Loan Servicing, LLC ("Ocwen") to satisfy the claims of Ocwen and defendant Mortgage Electronic

Registration Systems, Inc. ("MERS", with Ocwen, the "Mortgage Claimants") subject to the caveat that, as discussed in the stipulation between the United States and other claimants, *see* Docket No. 39-1 at 5-7, ¶¶ 8(c) and 10, the United States and the Mortgage Claimants have not reached an agreement as to what extent, if any, the Mortgage Claimants are entitled to attorneys' fees and costs;

    d.   any funds remaining should be distributed next to the United States, to be applied toward Mr. Cantliffe's outstanding tax liabilities; and

    e.   any funds remaining should be distributed next to defendant Colorado Department of Revenue, to be applied towards certain judgments discussed in the stipulation.  *See* Docket No. 39-1 at 4, ¶ 6.  It is further

**ORDERED** that, within 14 days of the entry of this order, the United States may have its costs by filing a proposed bill of costs with the Clerk of Court.  It is further

**ORDERED** that this case is closed.


DATED September 21, 2020.

                                                  BY THE COURT:

                                                _____
                                                PHILIP A. BRIMMER
                                                Chief United States District Judge